The Chancellor.
George D. Small, being the owner of a piece of land on the corner of Broad and Fulton streets, in Newark, of 106 feet on Broad and 300 feet on Fulton street, an agreement was entered into between certain persons, of whom the complainant was one, and Small, by which the property was to be taken at a valuation of $28,000, in shares of $1000, or half shares of $500 each, Small retaining an interest therein to.the amount of five shares ; the property to be advertised and sold at such time, in such manner, and on such *461 terms, as the owners of a majority of the shares should direct,.: ■the deeds to be given by Small and wife to the purchasers at such sale ; ten per cent, to be paid to Small at the signing of the agreement., and twenty per cent, on the delivery of the deeds; and the residue out of the cash and securities received from the purchasers. All the shares being subscribed for except the five retained by Small, he also subscribed the agreement. The manner and conditions of -sale were fixed, and the sale advertised fof May 21st, 1836. The property was divided,into building lots, and the buildings on the property were to be sold separately; the third article of the conditions of sale being as ■follows: “The building’s will be sold, to be removed within thirty days from this date from the premises/’ The fifth article of the conditions of sale was as follows : “ If any purchaser shall refuse to take the property bid off by him, it shall immediately be put up and resold, and if it shall sell for more, he shall not receive the benefit thereof; but if it sell for less, he shall make good the deficiency.” The seventh article provided, that the deeds would be ready for delivery by Ambrose Williams, (one of a committee of the associates,) at an office named in the article, on the Saturday after the sale. The eighth article provided, that each purchaser, before he left the place of sale, should subscribe the articles of sale. The buildings on the property were a building called Cadet Hall, on the corner; the main house on Broad street; a building on the south of the main house, and a barn on Fulton street. The land was divided into eleven lots; the first seven lots, numbered from I to 7 inclusive, were on Fulton street, No. 8 was the corner lot. Nos. 9, 10 and 11 were the next adjoining lots in order on. Broad street, the main house stood on lot 10 and part of lot 9, and the buildings south of the main house stood on lot No. 11. On the day fixed for the sale, the conditions of sale were first read, and each of the eleven lots was cried and struck off separately ; and each of the buildings, designated as before mentioned. was cried and struck off separately. Lot No. 11, of thirty-one feet front, was struck off to Small, at $179 per front foot; lot No. 10, of twenty-five feet front, next adjoining it on the north, was struck off to Ambrose Williams, one of the sub;; seribers, and one of a committee of three appointed by the as *462 eociat.es to- arrange for the sale and fix the conditions, at $177 per front .'foot; lot No. 9, next adjoining on the north, also of ■twenty-five feet front, to J. W. Condit & Co. J. W. Condit .(for J. WvCondit & Co.) was one of the subscribers, and one of said committee; the barn was struck off to G. D..Small; ■the main -house to A. Gifford. The buildings south of the .main house standing on the lot bought by Small, were struck off to Joel W. Condit & Oo., Condit bidding for them and signing the bid in that name, on a private understanding between him-and Small, that he was to buy them for Small. Lot No. 11 had been previously struck off to Small. The -persons to whom the several-lots and buildings-were struck off, all subscribed the- articles and acknowledged their purchases. J. W. Condit & Co., and A. Williams afterwards refused to take the lots struck off to - them respectively; alleging that they bid in the lots for the associates; and these lots,-9 and 10, were after-wards advertised to be sold on the 9th July, 1836. On that day they were severally exposed to sale at auction. The buildings were yet standing on these lots, and also that on lot No. 11; and the barn-was yet on the premises. The conditions of •the second sale were headed, “Articles of sale of lots, G. B. 'Small property, to close a concern, July 9th, 1836.”
The articles were as follows:—“ 1st, The highest bidder to be the purchaser. 2d, The terms of payment are 15 per cent, in 6 months, 15 per cent, in 12 months, with interest; and the balance by bond in 5 years, with: interest, secured by mortgage on the purchase. Deeds to bear date July 9th, 1836, from which time interest is- to be paid. The building to be removed by the first day of August next.”
The "building had been bought by A. Gifford at the first sale, and had not yet been removed. At this sale the complainant bought these two several lots, at separate biddings ; lot No. 9 at $--per front foot, and lot No. 10 at $—•— per front foot, and gave his notes and bond and mortgage according to the conditions of sale, and received a deed. Shortly before the bill was filed, Small brought his action against the complainant on his said bond.
On the 15th June, 1838, the complainant exhibited his bill, charging, as grounds of relief, -that he gave his notes and bond *463 and mortgage, and received his deed, under a presumption of die fairness of the transaction, and that the conditions of sale would be complied with by all the purchasers; but that after-wards, and after his notes were paid, he has been informed and believes, that there were no other real bidders for the property except himself; and that any bid in opposition to him was not for the person bidding, but in behalf of Small, to inflate the price, and that the price at which the lots were struck off to him was far beyond their value. That the whole of the said Small property was situated in- a well settled and respectable part of Newark; and that for many years a public house has been kept thereon; and that there were two buildings thereon which had been, from time to time, occupied as theatres and for public shows; and that on vacant lots thereon, circus riding and other entertainments were had; and that the buildings were generally old. That in order to free the neighborhood from this demoralizing influence, the subscribers to the said articles of agreement had entered into the same, and not for any profit to be expected ; and that hr making such arrangement it was their design, and was so represented and understood' by them and by Small, that all the buildings were to be removed from the premises, without which no reasonable inducement could be given to any person to purchase any of the lots-; and that it was with that intent that, among the conditions of said articles, it was made imperative on the purchaser of each lot to remove the buildings thereon. That the buildings on the' lot occupied by the complainant were removed therefrom ; but that on the adjoining lot on Broad street, to the south of those bid upon by the complainant, a part of the building still remains which had been occupied as a bar-room, and a long room in the rear thereof in which theatrical and other exhibitions had been made; and that an the lot No. 7, in Fulton street, an- old barn also remained. That Small had resided on the premises, and still continued to occupy them for some time thereafter as a tavern stand and for the purposes aforesaid ; and afterwards, for a short period, leased out the lot so bought by him and the tenement thereon as a tavern stand and for the purposes aforesaid ; and that the buildings thereon still continue to be maintained thereon, contrary to the design and understanding of aft *464 the parties interested in- the purchase,' and the conditions of sale under which the same was purchased ; by reason whereof the property bid off by the complainant has been greatly injured in value; and that Small still continues to own and exercise control over the'said lots so bought by him. That since the payment of his note for part of said consideration money, the complainant has been informed of the fact that Small was the true bidder for the said buildings, iu the name of J. W. Condit <fc Co.; and has also been informed that all the bidders against him Were bidders in behalf of Small. That .Small has brought suit on the bond given by the complainant. The bill prays an injunction to restrain the suit; and that the bond be delivered up to be cancelled ; and that Small may account for and pay back to the complainant all monies received for the lots bid off by the complainant; and that the deed for the same be decreed void ; or that Small be decreed to remove the buildings.
An injunction was-issued, according to the prayer of the bill.
The answer denies that there was any underbidding whatever at the'second sale;-and there is no proof of it. It also denies that there is any thing in the conditions of sale, even if the conditions of the first sale can be considered conditions of the second also, which requires a person who bought a lot and also the building standing on it, to remove the building from it; and I am of this opinion.
Another point is-made by the proofs in the case, and the argument of counsel on the part of the complainant: it is that Small induced the first subscriber for a share to put down his name by telling him that if he would subscribe it would go; and that he should sustain no loss. Whether this would avail a purchaser, at the sale made by the associates, the purchaser being one of the associates, I am not called upon to say: for the reason that no such ground is taken by the bill.
A complainant cannot be allowed to make one case by his. bill and another by his proofs.
Let the injunction be dissolved, and the bill dismissed.